Case: 1:12-cv-00163 Document #: 1-7 Filed: 01/10/12 Page 1 of 6 PageID #:29

Exhibit F Part 2

claiming to already have scheduled calls with your competitors who are already very very interested in taking the final block of meetings."

    (c)  "If you receive a phone call from a marcus evans employee, you might here something like this:

\* = Lie, false scenario, or outrageous exaggeration

**Hi, my name is _____ with the "your industry (ex: medical device)" group. I'm working\* with a group of VPs, and SVPs, (your potential target market), coming from big organizations in North America. I work with people like: name dropping, name dropping, name dropping…..**

And the reason why I'm calling you SPECIFICALLY\* today is because our group is interested in a company that does WHAT YOU GUYS DO\*.

… We work very closely with these executives to identify\* specific purchasing objectives and requirements for upcoming projects for the coming year. Once they send that information\* to us, what we do then is find common areas of demand within the group and then partner with organizations like yours in each area of demand to meet with our buyers. And this is done through a series of 1-1 business meetings designed to help our clients with their objectives.

We only work with a select group\* of solution providers like you. \*\*\* The ONLY reason why I'm contacting you today is because:

Scenario 1): One of our existing\* clients just asked us to transfer to our European Summit.

Scenario 2): One of our existing\* clients is filing for chapter 11.

Scenario 3): One of our existing\* clients didn't use their upgrade option.

….or any other similar scenario where the "existing client"\* forfited a deposit or had to pay a penalty of in between $5000 – $10 000.

NB. The "delegates", "buyers", or "executives" are being prospected like you. **They don't come on board because they are actively looking for solutions or suppliers.**

They will then "drop the price" which is always in between **$35 000** and **$50 000** for 2 executives taking 20-30 one-on-one meetings." (emphasis in original)

    (d)  "Long story short: The Corporate counsel were also scammed to show up at the Summit. The went for free or for a very discounted price if they agreed to interview 6 to 8 legal venders. Most did not have any need for

4

additional counsel. The in-house attorneys just wanted their CLE credit and a resort to visit.

Yes, you will meet many of the high-up IP counsel and perhaps decision makers from well known corporations. No, they were not carefully screened, nor did they work with anyone from Marcus Evans to determine if they really had any need for additional or new outside patent counsel for litigation, prosecution or contract work. I would bet that not a single IP attorney got a good solid lead toward new work. If anything is to be gained, it will occur in months and months of lead follow up, which most attorneys do anyway regardless of the CLE or IP convention they go to."

18. The re-published statements of fact in the July 27, 2011 post were untruthful.

19. Defendants knew the republished statements of fact in the July 27, 2011 were false or had no reasonable basis for believing the statements to be true.

20. Defendants republished the statements maliciously and with an evil intent to injure Marcus Evans without just cause or excuse.

21. After reading the false statements of fact on the Website, Marcus Evans representatives contacted Defendants to discuss the statements.

22. When Defendants did not respond to those efforts, Marcus Evans' Director of Client Management Relationships, Christopher Leese, sent a letter to Defendants offering the opportunity to discuss the false statements of fact. A copy of Leese's correspondence is attached at Exhibit B.

23. On August 8, 2011, Defendants posted additional statements of fact about Marcus Evans, its business and its employees on the Website. A copy of the August 8, 2011 post is attached at Exhibit C.

24. In the August 8, 2011 post titled, "Marcus Evans Fraud: Company Covers Up Scam Complaints (Ex. B)," Defendants did not provide any proof of "fraud complaints" or litigation against Marcus Evans. Defendants also did not provide proof of any "cover up."

25. The untruthful statements in the August 8, 2011 post include:

    (a) "Last week I wrote about a company called Marcus Evans, who got my attention by using dishonest sales tactics and scripted phone calls."

    (b) "[E]xcept when I Googled "Marcus Evans complaints," "Marcus Evans scam," and "Marcus Evans fraud," I found tons of websites that were clearly set up by the company to dominate the search engine rankings for those terms."

    (c) "[N]ow the company has resorted to threatening me. I received this threatening letter (sent to me three different ways, nonetheless) from Christopher Leese, the Director of Client Relationship Management at Marcus Evans."

    (d) "Peter Laspas also posed as supporters of Marcus Evans, attempting to post [ ] two comments to the blog using false names."

    (e) "Marcus Evans employees then turned into stalkers."

26. The statements of fact in the August 8, 2001 post were untruthful.

27. Defendants knew the statements of fact in the August 8, 2011 were false or had no reasonable basis for believing the statements to be true.

28. Defendants made the statements maliciously and with an evil intent to injure Marcus Evans without just cause or excuse.

29. On September 19, 2011, Coenen posted Defendants' response to comments on Defendants' July 27, 2011 post providing more statements of fact about Marcus Evans, its business and its employees (Ex. A).

30. The untruthful statements of fact in Defendants' September 19, 2011 comments include:

    (a) "Interesting, isn't it Chuck, the amount of time and effort the company went to in order to bully me into silence, and to create these sites to dominate search engine rankings and push down the criticism?"

    (b) "They are lying to service providers like myself[sic] when they say that in-house counsel is looking for new service providers."

    (c) "Marcus Evans created hundreds of websites to dominate search engine

rankings for fraud/complaints/scam and the name Marcus Evans."

31. The statements of fact in the comments posted September 19, 2011 were untruthful.

32. Defendants knew the statements of fact in the September 19, 2011 were false or had no reasonable basis for believing the statements to be true.

33. Defendants made the statements maliciously and with an evil intent to injure Marcus Evans without just cause or excuse.

34. On October 6, 2011, Defendants posted additional statements of fact on the Website under the entry titled, "Marcus Evans Fraud: Threats and Intimidation Continue." A copy of the October 6, 2011 post is attached at Exhibit D.

35. The untruthful statements in the October 6, 2011 post include:

   (a) "But Marcus Evans – – Peter Laspas, Chris Leese, Theron Burraway, and Ian Milne in particular – – sprang into action, threatening, intimidating, and stalking me."

   (b) "[I]t is clear that there are plenty of people who are suspicious of Marcus Evans and are doing research on the company."

36. The statements of fact in the October 6, 2011 post were untruthful.

37. Defendants knew the statements of fact in the October 6, 2011 were false or had no reasonable basis for believing the statements to be true.

38. Defendants made the statements maliciously and with an evil intent to injure Marcus Evans without just cause or excuse.

39. On October 7, 2011, MEI sent a letter to Defendants requesting that they cease and desist from continuing to post the false statements of fact. A copy of the October 7, 2011 correspondence is attached at Exhibit E.

7

## COUNT I

### (Defamation — TRACY COENEN)

40. Marcus Evans incorporates Paragraphs 1 through 39 as though fully set forth herein.

41. By engaging in the above actions, Coenen has made untruthful statements of fact about Marcus Evans, its business and its employees.

42. Coenen published her statements on the Website.

43. Coenen knew the statements of fact in the postings were false or had no reasonable basis for believing the statements to be true.

44. Coenen made the statements maliciously and with an evil intent to injure Marcus Evans without just cause or excuse.

45. Marcus Evans has sustained damages, including damage to its reputation, as a result of Coenen's publication of the untruthful statements. Specifically, Marcus Evans Chicago office has lost at least three customers totaling not less than $100,000 in compensatory damages.

## COUNT II

### (Defamation — SEQUENCE, INC.)

46. Marcus Evans incorporates Paragraphs 1 through 39 as though fully set forth herein.

47. By engaging in the above actions, Sequence has made untruthful statements of fact about Marcus Evans, its business and its employees.

48. Sequence published the statements on the Website.

49. Sequence knew the statements of fact in the postings were false or had no reasonable basis for believing the statements to be true.

50. Sequence made the statements maliciously and with an evil intent to injure Marcus Evans without just cause or excuse.

51. Marcus Evans has sustained damages, including damage to its reputation, as a result of Sequence's publication of the untruthful statements. Specifically, Marcus Evans Chicago office has lost at least three customers totaling not less than $100,000 in compensatory damages.

WHEREFORE, Plaintiff Marcus Evans respectfully requests the Court enter judgment in its favor and against Defendants Coenen and Sequence, award Marcus Evans damages against Defendants to be determined at trial, including punitive damages, and award such further relief as the Court deems just and necessary.

Dated: October 26, 2011

Respectfully submitted,

*[signature]*

One of the Attorneys for Defendant
MARCUS EVANS, INC.

David L. Weinstein
Stacey L. Smiricky
BAKER & DANIELS, LLC
311 S. Wacker Drive, Suite 4400
Chicago, IL 60606
312.212.6500
312.212.6501
Firm I.D. 44751